# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| SEAN MCCARLEY, *Individually and on behalf of all those similarly situated,* | : | Case No. 1:25-cv-348 |
| | : | |
| | : | Judge Matthew W. McFarland |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF HAMILTON POLICE DEPARTMENT, | : | |
| | : | |
| Defendant. | : | |

---

## ORDER AND OPINION

---

This matter is before the Court on Defendant The City of Hamilton Police Department's Partial Motion to Dismiss (Doc. 7) relating to the original Complaint (Doc. 1) and Partial Motion to Dismiss (Doc. 10) relating to the Amended Complaint (Doc. 8). With regard to Defendant's Partial Motion to Dismiss (Doc. 10) relating to the Amended Complaint (Doc. 8), Plaintiff filed a Response in Opposition (Doc. 11), and Defendant filed a Reply in Support (Doc. 12). Thus, this matter is fully briefed and ripe for the Court's review. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Partial Motion to Dismiss (Doc. 10), which relates to the Amended Complaint (Doc. 8), and **DENIES AS MOOT** Defendant's Partial Motion to Dismiss (Doc. 7), which relates to the original Complaint (Doc. 1).

## FACTS AS ALLEGED

Plaintiff Sean McCarley was employed by Defendant The City of Hamilton Police Department as a police officer from August 8, 2016, until December 22, 2024. (Am. Compl., Doc. 8, ¶ 15.) Specifically, Plaintiff served as a patrol officer and was a non-exempt employee for purposes of the Fair Labor Standards Act ("FLSA"). (*Id.* at ¶¶ 16–17.) In December 2022, Defendant offered Plaintiff a retention bonus. (*Id.* at ¶ 18.) Plaintiff accepted the retention bonus and signed a Retention Bonus Agreement ("Agreement") on December 27, 2022. (*Id.* at ¶ 22; Retention Bonus Agreement, Doc. 8-2, Pg. ID 75–76.) The Agreement provides, in pertinent part, as follows:

1. Payment of Retention Bonus. Subject to satisfaction of the conditions set forth below, you will be paid a Retention Bonus in the amount of $7,324.4 (10% of your base pay as of April 22, 2022), payable in one lump sum, less any applicable withholdings.

2. Conditions to Payment. In order to receive the Retention Bonus, you must remain employed by the City through January 31, 2025.

3. Termination of Employment. If your employment with the City is subsequently voluntarily or involuntarily terminated (except through a Reduction in Force (RIF) or voluntary retirement) prior to January 31, 2025, you must repay the City 100% of the bonus set forth in Paragraph 1 above. You acknowledge and agree that the repayment amount shall be the full amount as noted in the Paragraph 1 above and not the amount received less the applicable withholdings.

   a. You acknowledge and agree that in order to recover the Retention Bonus amount due, the City may deduct from your final paycheck(s) any wages, vacation pay, sick leave and/or any other moneys owed to you for any reason arising from employment with the City.

   b. You further acknowledge and agree that if the amount deducted by the City from the [sic] your final paycheck(s) is less than the total Retention Bonus amount due, you will pay the remaining balance in a lump sum within ninety (90) days of your termination date.

2

*　　*　　*

7. <u>No Appeal Rights.</u> You acknowledge that this Agreement is not subject to appeal rights through the grievance and arbitration provisions in the collective bargaining agreement between the City and the Fraternal Order of Police, Local 38 (the "Union") or through Civil Service or a court of competent jurisdiction. You agree not to initiate or pursue any grievance or other action involving the terms which are expressly contained or mentioned in this Agreement, or any agreement between the City and the Union regarding the Retention Bonus. You acknowledge the waiver of the contractual due process rights as set forth above.

(Retention Bonus Agreement, Doc. 8-2, Pg. ID 75–76.) Plaintiff received the entire retention bonus, less taxes and withholdings, soon after he signed the Agreement. (Am. Compl., Doc. 8, ¶¶ 23–24.)

On December 22, 2024, Plaintiff voluntarily resigned his position with Defendant. (Am. Compl., Doc. 8, ¶ 33.) Plaintiff's resignation date was earlier than January 31, 2025, the date through which Plaintiff was required to remain employed with Defendant in order to receive the retention bonus under the Agreement. (*Id.*) Thus, in line with the Agreement, Defendant deducted the full amount of the retention bonus from Plaintiff's last three paychecks. (*Id.* at ¶ 34; McCarley Paycheck Summaries, Docs. 8-3, 8-4, 8-5, Pg. ID 77–80.) And, in calculating the overtime rate for the pay period in which Plaintiff received the retention bonus, Defendant did not factor in the bonus amount. (Am. Compl., Doc. 8, ¶ 30.)

## PROCEDURAL HISTORY

On March 23, 2025, Plaintiff filed a Complaint (Doc. 1). Then, on August 12, 2025, Defendant filed a Partial Motion to Dismiss (Doc. 7) relating to the original Complaint (Doc. 1). However, on September 2, 2025, Plaintiff filed an Amended Complaint (Doc. 8).

3

Relevant for present purposes, Plaintiff brings claims against Defendant for denial of overtime pay under the FLSA and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), willful violation of the FLSA, failure to pay semi-monthly wages due under the Ohio Prompt Pay Act, and unjust enrichment/quantum meruit under Ohio law. (Am. Compl., Doc. 8, Pg. ID 66–70.) Plaintiff brings his FLSA claims as a collective action under 29 U.S.C. § 216(b). (*Id.* at Pg. ID 66.) On September 16, 2025, Defendant filed an Answer (Doc. 9) and a Partial Motion to Dismiss (Doc. 10), both relating to the Amended Complaint (Doc. 8). The Partial Motion to Dismiss (Doc. 10) which relates to the Amended Complaint (Doc. 8) is now ripe for the Court's review. (*See* Response, Doc. 11; Reply, Doc. 12.)

## LAW

A motion to dismiss for "failure to state a claim upon which relief can be granted" tests the plaintiff's cause of action as stated in a complaint. Fed. R. Civ. P. 12(b)(6); *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Put differently, the complaint must lay out enough facts for a court to plausibly infer that the defendant wronged the plaintiff. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). Courts must accept all allegations of material fact as true and must construe such allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 554-55; *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). However, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555.

4

## ANALYSIS

In its Partial Motion to Dismiss (Doc. 10) relating to the Amended Complaint (Doc. 8), Defendant moves to dismiss Counts Two, Three, Five, Six, and Seven of Plaintiff's Amended Complaint. (Motion to Dismiss, Doc. 10, Pg. ID 104–10.) The Court addresses each of Defendant's arguments in turn.

### I.     Counts Two and Five: Denial of Overtime Pay

Defendant first argues that Counts Two and Five of the Amended Complaint, which include claims for denial of overtime pay under both the FLSA and the OMFWSA, should be dismissed. (Motion to Dismiss, Doc. 10, Pg. ID 104–07.) In support, Defendant asserts that the retention bonus—although deposited into Plaintiff's account—was not required to be accounted for in the calculation of overtime pay because Plaintiff ultimately resigned before January 31, 2025. (*Id.*) In response, Plaintiff contends that Defendant conflates the categorization of the bonus monies for overtime calculation purposes with Plaintiff's obligation to return the money in the event of an early resignation. (Response, Doc. 11, Pg. ID 114.)

"Because the FLSA and the OMFWSA have the same overtime requirements, the outcomes will be the same and the claims can be evaluated together." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385 n.1 (6th Cir. 2016). Federal regulations outline the process by which overtime pay is calculated. In general, "overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed." 29 C.F.R. § 778.107. The "regular rate" of pay is defined as "the hourly rate actually paid the employee for the normal, nonovertime workweek for which

5

he is employed." 29 C.F.R. § 778.108 (citing *Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419 (1945)). And, "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. "Bonuses which are announced to employees to induce them . . . to remain with the firm" are considered non-discretionary bonuses that must be included as "part of the regular rate of pay." 29 C.F.R. 778.211(c). But, as Defendant points out, courts have recognized that an employee is not entitled to a retention bonus when a precondition included in a retention bonus agreement is not met. (Motion to Dismiss, Doc. 10, Pg. ID 106 (citing *Ryniewicz v. Clarivate Analytics,* No. 18-11314, 2019 U.S. Dist. LEXIS 11662, at *8 (E.D. Mich. Jan. 24, 2019); *Dorsey v. Shire Regenerative Med., Inc.,* No. 1:13-CV-1583, 2014 U.S. Dist. LEXIS 59853, at *5 (S.D. Ind. Apr. 30, 2014)).

Defendant argues that "the timing of the [bonus] payment does not dictate entitlement to the payment," and that "[i]t follows directly from the Plaintiff's lack of contractual right to the retention bonus that he does not have a right to overtime payments based on the same retention bonus and the same Agreement." (Reply, Doc. 12, Pg. ID 124.) Plaintiff makes two arguments in response. First, Plaintiff argues that the retention bonus constituted wages under Ohio law, as they were due to Plaintiff "by reason of employment," or by virtue of his employment as a police officer. (Response, Doc. 11, Pg. ID 115 (citing Ohio Rev. Code § 4111.01(A)).) But, this argument disregards the explicit condition specified in the Agreement: "In order to receive the Retention

6

Bonus, you must remain employed by the City through January 31, 2025." (Retention Bonus Agreement, Doc. 8-2, Pg. ID 75.) Second, Plaintiff asserts that his entitlement to the retention bonus vested because Defendant's advance payment of the bonus monies triggered vesting, and because Defendant withheld federal, state, city, and local taxes. (*Id.* at Pg. ID 115–16.) However, Plaintiff does not cite, and the Court is unaware of, any authority to support this contention.

The question before the Court boils down to this: When an employer pays an employee a non-discretionary retention bonus under an agreement, and the bonus is subsequently clawed back by the employer pursuant to the agreement, must the employer still account for the bonus in calculating the employee's overtime pay for the pay period in which the bonus was advanced? To answer this question, the Court looks to 29 C.F.R. § 778.106, which states that "[w]hen the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the [FLSA] will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable." In other words, if an employer cannot determine the applicable regular rate at which the employee is employed until a later date, it can defer paying overtime compensation until the regular rate is determinable. When that rate is determinable, the employer can then retroactively pay the employee the overtime compensation due, if any, as soon as practicable. Accordingly, the Court is not prepared to limit the analysis here to the amount initially paid to Plaintiff during the pay period in which he received the advance payment of the retention bonus, as § 778.106 explicitly permits employers to retroactively

determine what additional overtime is due, if any, in situations like this one.

The facts alleged by Plaintiff reveal that the retention bonus monies advanced to him under the Agreement were explicitly contingent on his continued employment with Defendant through January 31, 2025. (Retention Bonus Agreement, Doc. 8-2, ¶¶ 1–2.) Thus, until that later date, Defendant could not be certain as to whether Plaintiff was entitled to the retention bonus monies, even though Defendant paid the bonus in advance. As a result, until that later date, Defendant also could not be certain as to whether the retention bonus monies would need to be included in the overtime calculation. Because "the correct amount of overtime compensation [could not] be determined until some time after the regular pay period," Defendant was entitled to pay Plaintiff any "excess overtime compensation as soon after the regular pay period as [was] practicable." 29 C.F.R. § 778.106. If the contingency in the Agreement were met as of January 31, 2025, then Defendant could have retroactively paid Plaintiff any additional overtime due pursuant to § 778.106. But, the facts alleged demonstrate that Plaintiff resigned his employment with Defendant before January 31, 2025, so the contingency in the Agreement was not met. (Am. Compl., Doc. 8, ¶ 33.) Therefore, Plaintiff was not entitled to the retention bonus monies, meaning he was also not entitled to any additional overtime compensation based on the retention bonus. Accordingly, because Plaintiff does not state plausible claims for denial of overtime pay, Counts Two and Five of the Amended Complaint (Doc. 8) are dismissed.

8

## II.    Count Three: Willful Violation of FLSA

Defendant next argues that Count Three of the Amended Complaint, which brings a claim for willful violation of the FLSA, should be dismissed. (Motion to Dismiss, Doc. 10, Pg. ID 107–08.) "For an FLSA violation to be considered willful, a plaintiff must show that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute," and "[n]oncompliance with the FLSA that is merely negligent, even if unreasonable, is not considered willful." *Scheck v. Maxim Healthcare Servs.*, 333 F. Supp. 3d 751, 758 (N.D. Ohio 2018) (cleaned up). "[A] plaintiff must do more than make the conclusory assertion that a defendant acted willfully." *Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 498 (6th Cir. 2014). "[A]lthough conditions of a person's mind may be alleged generally, the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation plausible on its face." *Id.* (cleaned up).

Defendant asserts that Plaintiff's willfulness allegations are conclusory. (Motion for Summary Judgment, Doc. 10. Pg. ID 107–08.) In making this assertion, Defendant notes that "Plaintiff's Amended Complaint does not contain any non-conclusory allegations of willfulness, nor does it contain any allegations directed at Defendant's state of mind." (*Id.* at 108.) In response, Plaintiff argues that he does sufficiently allege willfulness because the Amended Complaint alleges that the Agreement includes an unlawful provision preventing Plaintiff from challenging any part of the Agreement in any forum. (Response, Doc. 11, Pg. ID 116 (citing Am. Compl., Doc. 8, Pg. ID 63, 66).) This provision, Plaintiff argues, was a proactive attempt by Defendant to insulate itself from

FLSA liability, and "Defendant would only attempt to take such an action if it knew it would later violate the law." (*Id.* at Pg. ID 117.)

"Courts in the Sixth Circuit have held that, so long as an FLSA defendant's alleged scheme is described in some detail, general assertions of willfulness create a plausible claim." *Dowd v. DIRECTV, LLC*, No. 14-CV-14018, 2016 U.S. Dist. LEXIS 36, at *16 (E.D. Mich. Jan. 4, 2016) (collecting cases); *see also Mabry v. DIRECTV, LLC*, No. 3:14-CV-698, 2015 U.S. Dist. LEXIS 125685, at *18 (W.D. Ky. Sep. 21, 2015) (finding that "allegations about the Defendants' implemented policies allegedly intended to evade the FLSA 'do[es] more than make the conclusory assertion that a defendant acted willfully'"). Here, Plaintiff alleges that "the terms of the retention bonus stated that officers receiving the bonus had no appeal rights nor any other method to challenge the payment and/or claw back of the bonus," and that "Defendant knew or should have known that its conduct violated the FLSA. Specifically, Defendant attempted to avoid any challenge to its unlawful and/or unconscionable claw-back provision by attempting to limit Plaintiff and the potential opt-in class members from opposing or otherwise seeking redress for the claw-back." (Am. Compl., Doc. 8, ¶¶ 20, 43.) And, in his Response, Plaintiff explains that the Sixth Circuit has held that "employees may not, either prospectively or retrospectively, waive their FLSA rights to minimum wages, overtime, or liquidated damages." (Response, Doc. 11, Pg. ID 116–17 (quoting *Boaz v. FedEx Customer Info. Servs.*, 725 F.3d 603, 606 (6th Cir. 2013)).) Thus, Plaintiff argues, Defendant violated the FLSA in including the provision that prevents Plaintiff from challenging any portion of the Agreement. (*Id.*)

Given these allegations, which relate to Paragraph 7 of the Agreement, the Court finds that Plaintiff has pleaded facts about Defendant's mental state that do more than simply conclude that Defendant acted willfully. Instead, Plaintiff has made allegations which, viewed in the light most favorable to Plaintiff, provide a factual basis for the willfulness allegation. Accordingly, Plaintiff's willfulness allegation is plausible on its face, and his claim for willful violation of the FLSA shall proceed.

### III. Count Six: Failure to Pay Semi-Monthly Wages Due

Defendant next argues that Count Six of the Amended Complaint, which brings a claim for failure to pay semi-monthly wages due under Ohio law, should be dismissed. (Motion to Dismiss, Doc. 10, Pg. ID 109.) In support, Defendant argues that the retention bonus did not constitute wages under Ohio law and that in signing the Agreement Plaintiff consented to the deduction of the bonus monies from his final three paychecks. (*Id.*; Reply, Doc. 12, Pg. ID 125–26.) In response, Plaintiff argues, without citation to authority, that Defendant improperly deducted the bonus monies from his last three paychecks, which resulted in a failure by Defendant to pay the minimum wage. (Response, Doc. 11, Pg. ID 117.) Plaintiff also reasserts his claim that Defendant improperly failed to include the retention bonus amount in calculating overtime for the pay period in which Defendant advanced the bonus monies to Plaintiff. (*Id.*) Finally, Plaintiff contends that the Court must accept his assertion that the bonus monies constituted wages under Ohio law as true. (*Id.* at Pg. ID 118.)

Plaintiff asks the Court to accept as a fact his legal argument that the retention bonus in question constituted wages under Ohio law, but the Court will not do so. *See*

11

*Poorman v. Servbank*, No. 2:23-CV-3945, 2026 U.S. Dist. LEXIS 50180, at *9 (S.D. Ohio Mar. 11, 2026) (citing *Twombly*, 550 U.S. at 555) ("In ruling on a motion to dismiss, the Court 'must take all the factual allegations in the complaint as true,' but it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'"). As a result, the Court examines whether the retention bonus constituted wages under Ohio law. Section 4113.15 of the Ohio Revised Code, the statute under which Plaintiff brings this claim, defines "wage" as "the net amount of money payable to an employee, including any guaranteed pay or reimbursement for expenses, less any federal, state, or local taxes withheld; any deductions made pursuant to a written agreement for the purpose of providing the employee with any fringe benefits; and any employee authorized deduction." Ohio Rev. Code § 4113.15(D)(1). This statute does not include bonuses in its definition of wages, so the retention bonus in this case does not qualify as wages under the statute. *See Jones v. Select Indus. Corp.*, No. 3:04-CV-152, 2006 U.S. Dist. LEXIS 40019, at *18 (S.D. Ohio June 16, 2006) (finding that a referral bonus did not qualify as wages under § 4113.15(D)(1)); *Lower v. Elec. Data Sys. Corp.*, 494 F. Supp. 2d 770, 775 (S.D. Ohio 2007) (finding that § 4113.15 "does not include bonuses in its definition of wages"). Thus, because the retention bonus does not qualify as wages under the applicable statute, Plaintiff fails to state a plausible claim to recover the retention bonus under Ohio law.

Plaintiff's argument that Defendant improperly deducted the bonus monies from his last three paychecks also fails to win the day. Section 4113.15 explicitly excludes "any employee authorized deduction" from its definition of wages. Ohio Rev. Code § 4113.15(D)(1). And, the Agreement signed by Plaintiff plainly states that "[y]ou

12

acknowledge and agree that in order to recover the Retention Bonus amount due, the City may deduct from your final paycheck(s) any wages, vacation pay, sick leave and/or any other moneys owed to you for any reason arising from employment with the City." (Retention Bonus Agreement, Doc. 8-2, Pg. ID 75.) Therefore, because Plaintiff consented to the deduction of the retention bonus monies from his final paychecks, the retention bonus amount deducted from his final three paychecks was not included in the definition of wages under § 4113.15. Thus, Plaintiff fails to state a plausible claim to recover the amount deducted from his final three paychecks under Ohio law.

Finally, the Court has already found that Plaintiff was not entitled to additional overtime pay based on the advanced retention bonus, so Plaintiff fails to state a plausible claim to recover any additional overtime pay under § 4113.15. *See Craig*, 823 F.3d at 385 n.1 (agreeing with the parties and trial court that the plaintiff's claim under § 4113.15 "rises and falls with her FLSA and Ohio Overtime claims"). Therefore, based on the foregoing reasons, Plaintiff has failed to state any plausible claim for relief under Section 4113.15 of the Ohio Revised Code. Accordingly, Count Six of the Amended Complaint is dismissed.

## IV. Count Seven: Unjust Enrichment/Quantum Meruit

Finally, Defendant argues that Count Seven of the Amended Complaint, which brings a claim for unjust enrichment/quantum meruit under Ohio law, should be dismissed. (Motion to Dismiss, Doc. 10, Pg. ID 110.) "Unjust enrichment allegations mirroring FLSA and OMFWSA allegations are not generally dismissed on a Rule 12(b)(6) motion." *Bowman v. MetroHealth Sys.*, No. 1:25-CV-256, 2025 U.S. Dist. LEXIS 230252, at

13

\*30 (N.D. Ohio Nov. 24, 2025). "Instead, '[a]t the very least, plaintiffs are permitted to plead claims in the alternative, and a court may not dismiss claims as preempted until the parties have had a chance to develop the facts during discovery to assess whether facts different from those comprising the [federal] claim support the state common law . . . claims.'" *Id.* (quoting *Clark v. Pizza Baker, Inc.*, No. 2:18-CV-157, 2020 U.S. Dist. LEXIS 178297, at \*13 (S.D. Ohio Sep. 28, 2020)).

Defendant argues that, because of the existence of the Agreement between the parties, Plaintiff cannot have a viable claim for unjust enrichment/quantum meruit. (Motion to Dismiss, Doc. 10, Pg. ID 110 (citing *Shepard & Assocs. v. Lokring Tech., LLC*, No. 1:20-CV-2488, 2021 U.S. Dist. LEXIS 51848, at \*30 (N.D. Ohio Mar. 19, 2021) (finding that "in the absence of fraud or bad faith, Ohio law prohibits recovery under a theory of unjust enrichment where an express contract covers the same subject," but "where the existence of a contract is in dispute, [an] unjust enrichment claim may be pled in the alternative to a breach of contract claim").) In response, Plaintiff asserts that he can bring such a claim via alternative pleading because he challenges the enforceability of certain provisions of the Agreement. (Response, Doc. 11, Pg. ID 118–19 (citing Am. Compl., Doc. 8, ¶¶ 76–81).) Defendant counters by noting that Ohio law allows for the severability of contractual provisions, meaning that if one clause in the Agreement is found invalid, that invalid clause would not void the entire Agreement, so the existence of the Agreement is not in dispute. (Reply, Doc. 12, Pg. ID 127–28.)

It is true that if the Agreement provisions challenged by Plaintiff are found to be void, Ohio law may require severance of those provisions rather than voidance of the

14

entire Agreement. (Reply, Doc. 12, Pg. ID 128.) Indeed, "even where a contract does not contain a severability clause, provisions may still be severed if it was the intent of the parties to do so." *Clark v. Ridi Acct., LLC*, No. 3:22-CV-589, 2022 U.S. Dist. LEXIS 202897, at *24 (N.D. Ohio Nov. 4, 2022); *see also Gaither v. Wall & Assocs.*, 79 N.E.3d 620, 632 (Ohio Ct. App. 2017) ("[A]n offending provision in an agreement may be severed if it does not fundamentally alter the otherwise valid and enforceable provisions of the agreement."). However, the Court declines to grant dismissal of this claim at this juncture for two reasons. First, it is not proper at the motion-to-dismiss stage to assume that it was the "intent of the parties" to sever provisions of the Agreement in the event one or more provisions are found to be unenforceable—the allegations do not shed light on this matter. Second, the parties have not yet had a chance to develop the facts through discovery in this case, so there has been no opportunity to "assess whether facts different from those comprising the [federal] claim support the state common law . . . claims.'" *Clark*, 2020 U.S. Dist. LEXIS 178297, at *13. Thus, because it is inappropriate to review this claim without a more developed record, Count Seven of the Amended Complaint shall proceed.

*     *     *

Before concluding, there is one final matter for the Court to address. Defendant's Partial Motion to Dismiss (Doc. 7), which relates to Plaintiff's original Complaint (Doc. 1), remains pending. Because Defendant's Partial Motion to Dismiss (Doc. 7) relating to the original Complaint (Doc. 1) does not relate to the operative complaint, it is subject to dismissal as moot. *Clark v. Johnston*, 413 F. App'x 804, 811 (6th Cir. 2011) (noting that

15

"[w]hen a pleading is amended . . . the amended pleading supersedes the original pleading, . . . the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading"); *United States ex rel. Yahsi v. Festo Didactic, Inc.*, No. 1:22-CV-478, 2026 U.S. Dist. LEXIS 44383, at *11–12 (S.D. Ohio Mar. 4, 2026); *Dawkins v. W. Chester Twp.*, No. 1:23-CV-464, 2024 U.S. Dist. LEXIS 162610, at *5 (S.D. Ohio Sep. 10, 2024); *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-CV-1225, 2019 U.S. Dist. LEXIS 243172, at *5 (S.D. Ohio Aug. 15, 2019). Therefore, Defendant's Partial Motion to Dismiss (Doc. 7) relating to the original Complaint (Doc. 1) is denied as moot.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1. Defendant's Partial Motion to Dismiss (Doc. 10), which relates to the Amended Complaint (Doc. 8), is **GRANTED IN PART AND DENIED IN PART**;

2. Counts Two, Five, and Six of Plaintiff's Amended Complaint (Doc. 8) are **DISMISSED WITH PREJUDICE**.

3. Counts One, Three, Four, Seven, and Eight of Plaintiff's Amended Complaint (Doc. 8) **SHALL PROCEED**; and

4. Defendant's Partial Motion to Dismiss (Doc. 7), which relates to the original Complaint (Doc. 1), is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND